UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JESSIE WILLIAMS, JR.                                    CIVIL ACTION

VERSUS                                                         NO. 10-879

ST. CHARLES PARISH                                  SECTION "A"(2)
SHERIFF OFFICE ET AL.

## REPORT AND RECOMMENDATION

Plaintiff, Jessie Williams, Jr., is a prisoner currently incarcerated in the River Correctional Center in Ferriday, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the St. Charles Parish Sheriff's Office – "Office of Adult Service South Jail," St. Charles Parish Sheriff Greg Champagne and several employees at the Nelson Coleman Correctional Center ("Coleman"), namely Warden John Nowak, Medical Director Kecia Charles, Tiffany Jones, Theresa Brimmer, Robert Dale and Shannon Brooks.

Williams alleges that, while incarcerated in Coleman, he was subjected to various unconstitutional conditions of confinement, including lax security, an inadequate administrative remedies procedure ("ARP"), unsanitary living quarters, inadequate ventilation, poor drinking water and exorbitant charges for canteen items.  He further asserts that favoritism was shown in transferring inmates and in providing fresh water to trustee dorms, that pretrial detainees were improperly housed with convicted prisoners

and that he was denied proper medical and/or dental care and access to the courts due to an inadequate law library and inadequate legal assistance.  His complaint seeks monetary damages and injunctive relief in the form of transfer to another prison facility.  Record Doc. Nos. 1 and 25 (Complaint and Amendment).

On April 30, 2010, defendant St. Charles Parish Sheriff's Office filed a motion to dismiss in this matter.  By order entered on July 8, 2010, the presiding district judge accepted my report and recommendation to dismiss with prejudice plaintiff's claims against this defendant.  Record Doc. Nos. 19, 35 and 41.  Thus, plaintiff's claims against the St. Charles Parish Sheriff's Office have already been dismissed.

On June 22, 2010, I conducted a telephone conference in this matter.  Participating were plaintiff pro se and Don Almerico, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Plaintiff testified that he is currently incarcerated in the River Correctional Facility, but that all of his claims in this case arise from his incarceration in Coleman in St. Charles Parish, Louisiana.  He stated that he is currently incarcerated based on his conviction on gun charges, specifically for being a felon illegally in possession of firearms.  He testified that he was convicted on April 29, 2009 in Jefferson Parish and is

2

serving a sentence of 14 years in prison.  Williams testified that he was incarcerated in Coleman for about a year after his conviction, from May 8, 2009 through May 14, 2010, when he was transferred to another facility.

As to his claim of inadequate security at Coleman, he testified that, on January 27, 2010, he saw Correctional Officer Tillman passing an inmate the keys "to open a hatch" to a cell, after which the inmate was passed a bag of eggs and other unknown items, which were then passed to another inmate.  He alleged that the officer should have opened the hatch himself.  Williams confirmed that he suffered no injury as a result of this incident, "but I felt like . . . if I'm incarcerated and security is doing things of that nature, . . . that's inappropriate."

As to his claim that prison officials showed favoritism among the inmates in connection with inmate transfers to other facilities, Williams testified that, upon his arrival at Coleman, he was told by Classification Officer St. Pierre that Williams had to be placed on a waiting list to be transferred to a state Department of Corrections ("DOC") facility.  Williams said he placed his name on the transfer list on May 11, 2009, assuming that he would be transferred to a DOC facility within 90 days, but he saw several inmates transferred before him, although their names were never on the list.  He testified that other inmates were favored in transfer decisions over him because the others, unlike Williams, either were St. Charles Parish residents or had relatives who were employed

by the St. Charles Parish Sheriff's Office.  He complained that these other transferred prisoners, including some with disciplinary violations or shorter prison sentences than his, were quickly transferred to a DOC facility, while he had to wait a year.  Williams testified that a DOC facility was preferable because training, trustee, job and other beneficial programs are available in DOC facilities, while no such programs were available to him at Coleman.  He stated that, based on his past incarceration experiences at Angola and other DOC prison facilities, an earlier transfer from Coleman to a DOC facility would have put him in "a place that I can really call home."

Williams confirmed that one of his claims in this case is that he was denied his First Amendment right of access to the courts because of an inadequate law library and no legal assistance at Coleman.  He testified that the library "had nothing in there that could benefit me and nobody to help me."  He confirmed that Coleman has a law library but he said the books are "old."  He said he was permitted to go into the law library "at least 20 times.  I spent my time in the law library to try to research my case and try to help myself get back in the courts."  Williams stated that he was attempting to do legal research in connection with the criminal case in which he was convicted and is currently serving prison time.  In connection with his criminal case, he testified that, at present, "I'm dealing with the appellate courts . . . .  I'm trying to get a reconsideration of sentence."  He said that he pled guilty to his current offense and was represented by

4

counsel at trial, but no longer has a lawyer.  Asked if he had filed anything with the court of appeal, he said, "There's no way I can get . . . the information I need to get in the appeal. . . .  I think I've got five months and 14 days left" to file something.  He said that even in the prison facility where he is currently incarcerated he does "not exactly" have what he needs to pursue his appeal.  He said he was unable to file anything while he was incarcerated at Coleman because the available law library materials were insufficient to permit him to prepare a proper appeal and he was not given any legal assistance.  He acknowledged that he had filed the instant civil case in this court while at Coleman and that he knew he had to file whatever he needed to file in connection with his criminal conviction in Jefferson Parish, where the conviction occurred.

As to his claim concerning inadequate medical and dental care, plaintiff confirmed that he had received and reviewed his medical records, which I previously ordered the defense to produce, Record Doc. Nos. 6 and 39, and that the records are accurate.  Asked about the specifics of this claim, Williams testified that his only claim in this case relates to his dental care.  He confirmed that he makes no claim in this case concerning his high blood pressure or any medical condition or treatment other than his dental care.  He confirmed that he received and took Tylenol.  Williams said he was involved in a motorcycle crash about 15 years ago, resulting in the need to have a "partial plate" or dentures placed in his mouth.  He stated that before his current arrest he was receiving

dental treatment at a private clinic in New Orleans, where a replacement plate was being made.  He complained that after his incarceration, he could not get the dental plate he had ordered.  He said that he submitted a request for dental treatment at Coleman on January 12, 2010, and he was seen by the dentist, who told him it would cost $500 to $1,100 to get the dental work to replace his partial plate done at the jail.  Williams testified that he could not afford those prices, "but if I was in a DOC facility all I would have to do is pay one co-payment and they'll do it for me free."  He clarified that his complaint in this case is that officials at Coleman would not perform his partial plate replacement without payment, while if he were in a DOC facility the dental work would be performed free of any charge to him.

Asked what problems he was experiencing as a result of his dental care issues at Coleman, Williams stated that he has five missing front teeth and "it's very hard to eat." He said that he received no other treatment for his dental problems and no dentures after his January 2010 visit to the dentist at Coleman.

Williams testified that he also asserts a claim in this case that the ARP at Coleman was inadequate.  He stated that he filed many grievances using the Coleman ARP, but that the responses were inadequate and unprofessional.  He acknowledged that prison officials "followed up on" his ARP grievances, "but the answers that I got back . . . it's ridiculous," rendering the ARP at Coleman useless in remedying his complaints.

6

As to his complaint that pre-trial detainees were housed together with convicted inmates, Williams acknowledged that he was a convicted inmate during his entire stay at Coleman.  He complained, however, that he should not have been housed with pre-trial detainees.  Asked how he was harmed by this housing system, he responded, "Say one of these guys that's not sentenced pre-trial is coming in there.  If you get into an altercation with them, they want to give you seven years.  I know a guy that was on the tier when I left, they gave him seven years because he had a simple fight. . . .  I felt like my safety, . . . if something did happen like that, I had to protect myself, so in the process of trying to protect myself, I'm looking at more time."  Williams conceded, however, that he did not get into any fights with a pretrial detainee or anyone else and did not suffer any additional sentence as a result of being housed with pretrial detainees at Coleman.

As to his other claims concerning the conditions of his confinement at Coleman, including inadequate ventilation, unsanitary living conditions and poor drinking water, Williams specifically complained that his meals were not hot.  He complained that all of his meals were cold and stacked on trays with "no steam lines, no steam table."  He said that drinking water was provided in a five-gallon water cooler in the morning once a day, iced only one time, then left to become warm in the afternoon after the ice melted.  He complained that inmates stuck their hands or cups in the water cooler, that "no scoop" was provided and that it was unsanitary.  Williams acknowledged that, in addition to the

water cooler, the areas where inmates lived were equipped with sinks and faucets, but he complained that the water available from them was not cold.  He testified that the ventilation was inadequate in that, although it was air-conditioned and air was blowing, the air flow was insufficient.  He complained that the showers and urinals were too close to where the inmates congregated for eating and other activities in the dayroom area, so that the smell was bad and conditions were unsanitary.  He said he was housed in a two-story "pod" with several sinks and toilets for the inmates.  Williams said the conditions led to sickness among the inmates, who were then charged for medical treatment.  He said that he "got sick a couple of times," and that the doctor tried to prescribe Benadryl, Claritin or other medications for him, "but I told him I don't take that."  Williams described the sickness he suffered as "cold" symptoms, including coughing and sneezing, which he had already fought off by the time the doctor prescribed the medications for him.

Williams also testified that he asserts a claim in this case that the prices charged to inmates for goods available for purchase by them at the jail canteen were too high, "up to the roof."  He said items worth only 20 or 40 cents were being sold for 80 cents, "and on top of that they would charge you taxes on the items."  He said the prices were so high that it was difficult for an inmate with limited funds to shop at the canteen.  He said he bought "a lot" of things at the canteen, like soap, personal hygiene supplies, food and

microwaveable items.  He complained that "they sell microwaveable items, and there's no microwave" provided for use by the inmates to cook the items.

Asked to explain a letter he had submitted to the court about items of his personal property for which there had not been a proper accounting, Record Doc. No. 26, Williams testified that upon his arrest and initial incarceration in the Jefferson Parish Correctional Center on the charge for which he was ultimately convicted, Jefferson Parish officials took possession of his watch, earrings, a ring, a radio, a cross chain, his Blackberry cell phone and some personal hygiene items.  He said that all of these items were shipped with him from Jefferson Parish when he was transferred to Coleman, but that all of his property has not been delivered or shown to him.  He said he saw Corporal Duckworth at Coleman about his property, and all of it had been delivered by then.  He said his complaint was that all of his property was not delivered to him upon his arrival at Coleman and that he has not been permitted to have his personal hygiene supplies. "They didn't properly secure my items, my things," he said.

After the conference, counsel for defendants requested and was granted leave to file verified copies of the original property records in Coleman's possession pertaining to plaintiff.  Record Doc. Nos. 40 and 42.  Those records include a "Receipt for Inmate Property Received," dated May 8, 2009 and signed by plaintiff and the prison's property officer, which states that plaintiff arrived with a blue shirt, pair of blue jeans, pair of blue

9

shoes and "miscellaneous 1–see Intake."  There is no record marked "Intake" or any record concerning the receipt of any other property items when Williams arrived. Another document entitled "Receipt for Inmate Property Released" indicates that, when Williams was released to the custody of a Concordia Parish deputy on April 14, 2010, he had several items of personal property in addition to the original shirt, jeans and shoes, including two pairs of glasses, Louisiana identification, keys, wallet, Visa card, headphones and additional clothing items.  The list of released property also refers to "miscellaneous 1–see Intake," but does not itemize any such items or include a copy of that Intake document.  Record Doc. No. 40-1.  After plaintiff and the court received this submission from defense counsel, plaintiff responded with a written submission of his own disputing defendants' documents and setting out the items of his personal property that he alleges are involved in this claim.  Record Doc. No. 44.

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as

long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section

1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

## II.   LAX SECURITY/FAILURE TO PROTECT

Williams alleges that defendants failed adequately to protect him from harm because jail security was lax. Specifically, he alleges that security at the jail was inadequate because he saw a correctional officer pass an inmate keys "to open a hatch" to a cell, instead of the officer opening the hatch himself. Plaintiff testified that he suffered no injury as a result of this incident, "but I felt like . . . if I'm incarcerated and security is doing things of that nature, . . . that's inappropriate." Accepting as true for present purposes all of Williams's written submissions and testimony, I must conclude

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

that no violation of his constitutional rights by the defendants occurred in these circumstances.

Plaintiff's claim in this regard is deficient under Section 1983 because he fails to allege any "physical injury" sufficient to support his claim for monetary damages. Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement: "<u>No</u> Federal civil action <u>may be brought</u> by a prisoner confined in a jail, prison, or other correctional facility, <u>for mental or emotional injury</u> while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) (emphasis added). Williams does not allege any specific "injuries" as a result of the alleged lack of adequate security.

In recent decisions, the Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as Williams has alleged in this case.  <u>Mayfield v. Tex. Dep't of Crim. Justice</u>, 529 F.3d 599, 606 (5th Cir. 2008); <u>Hutchins v. McDaniels</u>, 512 F.3d 193, 196 (5th Cir. 2007); <u>Geiger v. Jowers</u>, 404 F.3d 371, 374-75 (5th Cir. 2005); <u>Herman v. Holiday</u>, 238 F.3d 660, 665 (5th Cir. 2001).

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" <u>Alexander v. Tippah County</u>, 351 F.3d 626, 631 (5th Cir. 2003) (citing <u>Harper v. Showers</u>, 174 F.3d 716, 719

14

(5th Cir. 1999) (quoting <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997); <u>accord</u> <u>Adeleke v. Heaton</u>, 352 F. App'x 904, 908 (5th Cir. 2009); <u>Mayes v. Travis State Jail</u>, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008).  Thus, in <u>Alexander</u>, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they suffered were nausea and one incident of vomiting.  <u>Id.</u>  Similarly, in <u>Siglar</u>, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury.  <u>Siglar</u>, 112 F.3d at 193; <u>see also</u> <u>Adeleke</u>, 352 F. App'x at 908 (Plaintiff's sore shoulder, which he treated with Tylenol and for which he did not require medical attention, was no more than de minimis.).

In this case, Williams admittedly suffered <u>no</u> physical injuries of any kind as a result of the alleged lack of adequate security, but stated only that he "felt" that the officer's action was "inappropriate."  Even if the court interprets plaintiff's "feeling" as a psychological or other emotional injury, Section 1997e(e) provides, and Fifth Circuit case law makes clear, that he is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, <u>Hutchins</u>, 512 F.3d at 197-98, Williams has not shown any constitutional violation that would entitle him to even nominal damages,

"[n]or has [he] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages." Allen v. Stalder, 201 F. App'x 276, 276-77 (5th Cir. 2006) (citing Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, plaintiff's complaint must be dismissed in this regard.

Therefore, prison officials cannot be liable for failing to protect plaintiff by providing lax security because no finding of deliberate indifference required to state a constitutional claim is possible in these circumstances. Accordingly, plaintiff's Section 1983 claim of failure to protect from harm must be dismissed.

III.    FAVORITISM REGARDING TRANSFER

Plaintiff testified that prison officials showed favoritism among the inmates in connection with inmate transfers to other facilities. Specifically, Williams testified that he placed his name on the transfer list on May 11, 2009, but that several inmates, including some who had disciplinary violations or shorter prison sentences than he had, were transferred before him. He alleged that other inmates were favored over him in transfer decisions because they either were St. Charles Parish residents or had relatives who were employed by the St. Charles Parish Sheriff's Office. He complained that these other prisoners were transferred to a DOC facility quickly, while he had to wait a year. Construed broadly, these allegations may constitute an assertion that plaintiff's equal protection rights were violated.

16

It is well established that

"a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."  Rather, as long as they do not burden a fundamental right or target a suspect class, state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes.

Johnson v. Rodriguez, 110 F.3d 299, 306 (5th Cir. 1997) (quoting Dandridge v. Williams, 397 U.S. 471, 485 (1970)) (additional quotation omitted); accord Sonnier v. Quarterman, 476 F.3d 349, 368 (5th Cir. 2007).

Plaintiff's equal protection claim regarding the preferential transfer of other inmates to DOC facilities fails to state a claim cognizable under Section 1983 for several reasons.  First, his testimony establishes that no fundamental right was burdened by defendants' failure to transfer him before it transferred other inmates.  "The Supreme [C]ourt has explained that fundamental rights, for equal protection purposes, are such rights as:  a right of a uniquely private nature [such as the right to procreate], the right to vote, right of interstate travel and rights guaranteed by the First Amendment."  Id. at 368 n.16 (citing Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 312 n.3 (1976)). Defendants' failure to transfer Williams to a DOC facility as quickly as he would have liked does not implicate any fundamental right.

Second, Williams does not allege that he is a member of a suspect class.  "A suspect class, as used in an equal protection analysis, is one saddled with such

17

disabilities, or subjected to a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.  Examples of suspect classes are those based upon race, ancestry, or religion."  Id. at n.17 (citations omitted); see also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985) (heightened equal protection scrutiny applies only to classifications based on race, alienage, national origin, gender and illegitimacy).

Persons, such as Williams, who resided in a different parish before being arrested and convicted than the parish where they are incarcerated are not a suspect class.  A convicted inmate is not a member of any suspect class based on the fact of his conviction. Johnson, 110 F.3d at 307 n.10; Roca v. Stalder, No. 07-511-JVP-DLD, 2008 WL 1994878, at *2 (M.D. La. May 8, 2008) (citing Rochon v. La. State Penitentiary Inmate Account, 880 F.2d 845, 846 (5th Cir. 1989)).  "The fact that [plaintiff] is in a state of confinement that denies him a contingent benefit [based on his particular conviction and sentence] that might be available to other prisoners who are subject to [transfer] does not deprive him of equal protection of the laws."  Rochon, 880 F.2d at 846.

To withstand equal protection review, government classifications that distinguish between persons who are not members of a suspect class and other persons need only be "rationally related to achieving a legitimate government interest.  The actual reason for

18

a state action is irrelevant for claims reviewed under rational-basis scrutiny and will be upheld if 'any state of facts reasonably may be conceived to justify [the State's discrimination].'" Newman Marchive P'ship, Inc. v. Hightower, 349 F. App'x 963, 965 (5th Cir. 2009) (quoting McGowan v. Maryland, 366 U.S. 420, 426 (1961)) (citing Delahoussaye v. City of New Iberia, 937 F.2d 144, 149 (5th Cir. 1991)).

Furthermore,

disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted. Thus, a party who wishes to make out an Equal Protection claim must prove "the existence of purposeful discrimination" motivating the state action which caused the complained-of injury. "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."

Johnson, 110 F.3d at 306-07 (citing Washington v. Davis, 426 U.S. 229, 246-250 (1976)) (quoting McCleskey v. Kemp, 481 U.S. 279, 292-93 (1987); Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995); Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988)) (emphasis in original).

Therefore, mere classification into separate groups "does not of itself deprive a group of equal protection of the law." Sonnier, 476 F.3d at 369 (citing Carrington v. Rash, 380 U.S. 89, 92 (1965)). In Sonnier, the Fifth Circuit held that the Texas legislature's amendment of its death penalty statute created a classification among

convicted capital offenders by treating those convicted of capital murder before the effective date of the legislation differently than those convicted of capital murder after that date.  Despite that classification, the court held that no invidious, discriminatory purpose had been alleged and no equal protection violation had occurred.  Id.  In the instant case, the fact that Williams is in a class of persons who were not transferred during the time period that he expected does not, of itself, either state a discriminatory purpose or deprive that group of equal protection.

Plaintiff's testimony in the instant case failed to show that Coleman employees acted with purposeful discriminatory motivation.  Williams merely speculates that other inmates were transferred before him because they were St. Charles Parish residents or had relatives employed by the St. Charles Parish Sheriff's Office.  However, any number of legitimate, nondiscriminatory reasons, other than intentional discrimination, could explain why other inmates were transferred before plaintiff, such as the dates when the inmates were convicted, the nature of their crimes, their sentences, their disciplinary records while incarcerated at Coleman and elsewhere, the physical capacities of Coleman and the DOC facilities to hold a certain number of inmates, and the number of inmates who were in each facility during the relevant time period.  Factors such as these would form a rational basis for the challenged transfers.  A rational basis is all that is required to withstand equal protection review in these circumstances.

In addition to alleging intentional discrimination, plaintiff must allege that "similarly situated" individuals were treated differently.  Crull v. City of New Braunfels, 267 F. App'x 338, 341 (5th Cir. 2008); Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007); McKnight v. Eason, 227 F. App'x  356, 356 (5th Cir. 2007).  Williams testified that some of the inmates who were transferred before him had disciplinary violations or shorter prison sentences than his.  Factors like these distinguish that group of earlier transferees from plaintiff.  Because Williams "has not alleged that he was treated differently than similarly situated persons . . . , he has not alleged an equal protection claim."  Crull, 267 F. App'x at 341 (emphasis added).

Finally, even the deferential "rational basis" scrutiny that is applied to ordinary governmental classifications is not appropriate when the challenged action does not create any classifications at all.

> [I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action–even if irrational–does not deny them equal protection of the laws.  Thus, when we are confronted with a state action which does not so classify or distinguish, we need not consider whether there is a "rational basis" for that action because such state actions are not subject to Equal Protection scrutiny.

Johnson, 110 F.3d at 306 (quotation and citations omitted).  In the instant case, despite Williams's speculation that transfer decisions were made on the basis of an inmate's pre-incarceration residence or familial relationship with the Sheriff's employees, the relevant

group is that of inmates eligible for transfer to a DOC facility.  No showing has been made of any relevant distinctions within that group.

Thus, Williams's "discrimination" claim in this case fails to state a claim cognizable under Section 1983.  The classifications about which he complains neither burden a fundamental right nor target a suspect class or otherwise protected identifiable group.  His testimony establishes that prison officials' decisions concerning transfers of inmates from Coleman to DOC facilities are not based on race or any other constitutionally prohibited criteria.  In addition, plaintiff clearly has no fundamental right to be housed in any particular prison facility.

Insofar as plaintiff may allege that his delay in transfer to a DOC facility was due to his inmate classification at the jail, it is clear that a prisoner has no right of any kind springing from the Constitution itself to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another.  Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Fuselier v. Mancuso, 354 F. App'x 49, 49 (5th Cir. 2009) (citing Olim, 461 U.S. at 245; Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996)), cert. denied, 130 S. Ct. 3417 (2010); Biliski, 55 F.3d at 162.

Constitutionally protected liberty interests may be created not only by the Constitution itself, however, but also by state law.  Not every state statute creates a liberty interest protected by the Constitution and cognizable under Section 1983.  On the contrary, a state statute creates constitutionally protected interests only if it establishes that state officials must take mandatory, non-discretionary actions in connection with the life, liberty or property of citizens.  Olim, 461 U.S. at 249; Taylor v. Jagers, 115 F. App'x 682, 684 (5th Cir. 2004) (citing Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989)); Lathers v. Nelson Coleman Corr. Ctr., No. 10-128, 2010 WL 1489903, at *3 (E.D. La. Mar. 22, 2010) (Shushan, M.J.), report & recommendation adopted, 2010 WL 1485468 (E.D. La. Apr. 13, 2010) (McNamara, J.).  Thus, state statutes that vest officials with broad discretion to carry out their official functions do not create constitutionally protected interests that may form the basis for an action under Section 1983.  See Olim, 461 U.S. at 249-50 (Hawaii prison regulations vesting prison administrators with broad discretion concerning inmate placement and transfers create no liberty interest protected under the Due Process Clause); Merit v. Lynn, 848 F. Supp. 1266, 1267-68 (W.D. La. 1994) (Louisiana parole statute is broadly discretionary and creates no constitutionally protected liberty interest).

In the instant case, Williams's claim that he was entitled to be housed in a prison facility other than Coleman is governed by the related Louisiana statutes, La. Rev. Stat.

§ 15:566(B) and 15:824(B), which set forth the circumstances under which prisoners convicted of state criminal offenses are to be sent to DOC facilities from parish jails, and the myriad exceptions under which they may remain in parish facilities.  These statutes vest extremely broad discretion in the DOC officials who are responsible for the placement of state prisoners.  As one Louisiana appellate court stated, in interpreting La. Rev. Stat. § 15:824 and vacating the order of a trial judge who attempted to require the DOC to remove convicted state prisoners from Orleans Parish Prison to a DOC facility,

> [t]his statute clearly envisions that the Department of Corrections <u>may be unwilling or unable</u> to take physical custody of prisoners sentenced to hard labor.  In such an event, the department is obligated to pay the local sheriff or jailer for the costs of keeping such a prisoner . . . .  The legislature by these enactments has manifested a <u>clear intent to leave the physical placement of prisoners within the jurisdiction of the DOC alone</u>.

<u>State v. Sylvester</u>, 648 So. 2d 31, 33 (La. App. 4th Cir. 1994) (emphasis added); <u>accord</u> <u>Oglesby v. Gusman</u>, No. 09-3593, 2009 WL 3254145, at *3-4 (E.D. La. Oct. 7, 2009) (Vance, J.); <u>Andrews v. Belt</u>, No. 07-CV-1283, 2007 WL 3046130, at *2 (W.D. La. Oct. 2, 2007) (Kirk, M.J.), <u>aff'd</u>, 274 F. App'x 359 (5th Cir. 2008).

Thus, the State of Louisiana by its broadly discretionary statutes has <u>not</u> created a protected liberty interest in being housed in a particular prison or being transferred from Coleman to another facility.  Williams has no constitutional right to be housed in a DOC prison or any particular facility, under either the Constitution or state law.  This claim is legally frivolous and fails to state a cognizable Section 1983 claim.

In summary, Williams did not establish that the acts by Coleman employees burdened any fundamental right, targeted a suspect class, evidenced any discriminatory purpose or imposed a constitutionally improper administrative classification.  Thus, his claim concerning the lack of a transfer to a DOC facility is based on a meritless legal theory and should be dismissed as frivolous.

IV.    LAW LIBRARY/LEGAL ASSISTANCE

Plaintiff testified that he was denied his First Amendment right of access to the courts because of an inadequate law library and no legal assistance at Coleman. Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel.  Bounds v. Smith, 430 U.S. 817, 828 (1977); Dickinson v. TX, Fort Bend County, 325 F. App'x 389, 390 (5th Cir. 2009); Sandoval v. Johns, 264 F.3d 1142, 2001 WL 822779, at *1 (5th Cir. June 29, 2001); McDonald v. Steward, 132 F.3d 225, 230 (5th Cir. 1998); Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir. 1996).  A prison need not provide its inmates with a library that results in the best possible access to the courts, but must provide a library or other assistance that meets minimum constitutional standards of providing access to the courts. Phillips v. Hust, 588 F.3d 652, 656 (9th Cir. 2009) (citing Bounds, 430 U.S. at 829; Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 856 (9th Cir. 1985)); Petrick v. Maynard, 11 F.3d 991, 994 (10th Cir. 1993); Brooks v. Soto, No. CV05-1618-DDP, 2009

WL 2025325, at *9 (C.D. Cal. July 7, 2009) (citing <u>Bounds</u>, 430 U.S. at 829; <u>Lindquist</u>, 776 F.2d at 856); <u>Goodvine v. Gorske</u>, No. 06-C-0862, 2007 WL 2207910, at *4 (E.D. Wis. July 30, 2007) (citing <u>Campbell v. Miller</u>, 787 F.2d 217, 229 (7th Cir. 1986)); <u>Hargrove v. Henderson</u>, No. 95-1601-CIV-T-17A, 1996 WL 467516, at *10 (M.D. Fla. Aug. 13, 1996), <u>aff'd</u>, 124 F.3d 221 (11th Cir. 1997).

However, this constitutional right is not without limitations. "'While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court.'" <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996) (quoting <u>Brewer v. Wilkinson</u>, 3 F.3d 816, 821 (5th Cir. 1993)); <u>accord</u> <u>Treece v. Andrews</u>, 188 F. App'x 230, 231 (5th Cir. 2006); <u>Vaccaro v. United States</u>, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997).

Significantly, to state a claim that his constitutional right of access to the courts was violated, Williams must demonstrate that his position as a litigant was actually prejudiced. <u>Lewis v. Casey</u>, 518 U.S. 343, 356 (1996); <u>Cochran v. Baldwin</u>, 196 F. App'x 256, 258 (5th Cir. 2006); <u>Smith v. Polunsky</u>, 233 F.3d 575, 2000 WL 1468717, at *1 (5th Cir. 2000); <u>Eason</u>, 73 F.3d at 1328. The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351.

Williams wholly fails to establish the essential elements of a First Amendment claim detailed above, either in his complaint or his testimony, in the following ways. First, Williams testified that he needed access to a law library or other legal assistance at the prison to do legal research in connection with his appeal of the criminal case in which he was convicted and is currently serving prison time.  He stated that he did not have an attorney to assist him with his appeal.  Plaintiff testified that Coleman has a law library, but he complained that the books were "old."  He acknowledged, however, that he was permitted to go into the law library at least 20 times and that, at the time of the Spears hearing, he had more than five months left within which to file something with the appellate court.

Under these circumstances, plaintiff's right of access to the courts, as guaranteed by the Constitution and interpreted by Bounds, was clearly satisfied by his access to the law library.  Generalized complaints that a prison law library does not have enough books or the precise books that an inmate wants do not state a constitutional violation. See Wall v. Black, No. 5:08-cv-274, 2009 WL 3215344, at *9-10 (S.D. Miss. Sept. 30, 2009) (quoting Jones v. Greininger, 188 F.3d 322, 325 (5th Cir. 1999)) (additional citations omitted) ("The right of access to the court 'does not afford prisoners unlimited access to prison law libraries.' . . . [Inmate's allegations that] the main law library does not have many of the books he needs in order to conduct legal research . . . are clearly not

27

sufficient to establish a constitutional violation . . . ."); Diaz v. Turner, No. 6:02-CV-0070-B, 2004 WL 2165374, at *3 (N.D. Tex. Sept. 23, 2004), motion for relief from judgment denied, 2004 WL 2533196 (N.D. Tex. Nov. 5, 2004), aff'd, 160 F. App'x 360 (5th Cir. 2005) (Inmate must do more than "establish[ ] that his prison's law library or legal assistance program is subpar in some theoretical sense."); see also United States v. Liedtke, 107 F. App'x 416, 417-18 (5th Cir. 2004) (When prisoner had ample time to file his appellate brief, his allegations that his brief was untimely because of the closure of the prison library and a prison lockdown "do not rise to a constitutional infringement on the right of access to the courts.").

As to the instant civil action, it is clear that plaintiff has submitted materials sufficient to prosecute his civil case in this court.  His case has proceeded through a Spears hearing and is now being considered on its merits. Therefore, it must be concluded that his First Amendment right, which encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court, Treece, 188 F. App'x at 23, was not violated.

In addition, it is clear that no actual legal prejudice to Williams's position as a litigant of the type required by Lewis was caused by any action or omission of the defendants.  "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains."  Hart v.

O'Brien, 127 F.3d 424, 446 (5th Cir. 1997), abrogated in part on other grounds as recognized in Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999); accord Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000).  In Lewis, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts.  In examining the particular claims of the inmates in the Lewis case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."  Lewis, 518 U.S. at 356 (emphasis added).

As noted above, a prisoner's First Amendment right of access to the courts encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court.  Williams conceded in his testimony that he has had access to a law library at the jail and that he was aware of his filing deadline and where he needed to file his appeal.  It is also clear that he has been able to file all necessary pleadings in the instant civil case.

For all of the forgoing reasons, Williams's claim concerning inadequate access to a law library at the jail is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

V.     DENTAL CARE

Williams contends that he received inadequate dental care during his incarceration in Coleman.  Specifically, he testified that he had ordered a partial dental plate in New Orleans before his current arrest.  He complained that, after his incarceration, he could not get the partial dental plate he had ordered.  He said that, on January 12, 2010, he was seen by the Coleman dentist, who told him it would cost $500 to $1,100 to replace his partial plate at the jail.  Williams testified that his complaint in this case is that officials at Coleman would not replace his partial plate without payment, while the dental work would be performed free of any charge to him if he were in a DOC facility.

Williams was a convicted prisoner at all relevant times about which he complains. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

In this case, Williams's allegations negate any inference that defendants acted with deliberate indifference to his serious medical needs.  Initially, it cannot be concluded that the condition he described, consisting of the lack of a partial dental plate, presented a serious medical need that posed a substantial risk of harm during his incarceration at the jail.  This complaint does not rise to the level of a serious medical need for purposes of constitutional analysis.  See Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) ("Ordinarily, a tooth cavity is not a serious medical condition" and treatment "can safely be delayed."); Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (delay in treating broken tooth not sufficiently serious); Mosely v. Highsmith, No. 4:07-CV-1578, 2008 WL 294484, at *2 (E.D. Mo. Jan. 31, 2008) (installing a crown not a serious medical need); O'Connor v. McArdle, No. 04-CV-314, 2006 WL 436091, at *6, *9 (N.D.N.Y. Feb. 22, 2006), aff'd, 217 F. App'x. 81 (2d Cir. 2007) (Inmate's request for a replacement permanent bridge was not a serious medical need when he received ongoing dental treatment, his dentist did not recommend a replacement bridge and plaintiff did not allege any demonstrable physical injury or effect on his activities of daily living.).

Even assuming, however, for present purposes that plaintiff's medical problem, consisting of a lack of a partial plate, was serious, Williams has alleged facts, confirmed by his testimony and his medical records, that negate any conceivable inference of deliberate indifference by jail officials.  During his testimony, plaintiff stated that he had reviewed all of his medical records and that they were accurate.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention for the condition about which he complains while incarcerated in the jail.  To the extent that he might have suffered any pain from his dental problem, he received Tylenol twice a day for most of the time that he was incarcerated.  He also received a soft diet indefinitely beginning on December 8, 2009. When he asked to see a dentist about his plate on January 12, 2010, he was seen by a dentist two days later.  The dentist noted that plaintiff needed an upper partial and that an acrylic one would cost $500, while a metal plate would cost $1100.  On January 26, 2010, Williams saw a doctor for complaints of knee pain, but made no mention of any problems related to his teeth or partial plate.  There are no further medical requests or medical records after that date, although plaintiff was not transferred away from Coleman until May 14, 2010.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent to plaintiff's condition.  While it is clear from his allegations and

testimony that he is not satisfied with the effectiveness of his dental care, it is equally clear that the dental care provided was constitutionally adequate.  Certainly, no finding of deliberate indifference to serious medical needs can be made based on this record, which includes the provision of pain medication, a soft diet and an examination by a dentist.  See, e.g., Banks v. York, 515 F. Supp. 2d 89, 103-04 (D.D.C. 2007) (Prison officials' failure to provide inmate with replacement crown was not deliberate indifference when dentist treated prisoner with antibiotics and offered to extract affected teeth.); O'Connor, 2006 WL 436091, at *10 (Even assuming that plaintiff had a serious medical need, no deliberate indifference existed when he was seen promptly by a dentist, but refused the treatment offered, continued to see the dentist and to receive pain medication, and eventually received an alternative procedure.).

Contentions like Williams's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted); see id. (Active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if treatment was negligently administered.); see also Estelle, 429 U.S. at 107 ("[W]hether an X-ray or additional diagnostic techniques

34

or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice . . . ."); McQueen v. Karr, 54 F. App'x 406, 2002 WL 31688891, at *1 (5th Cir. 2002) (Plaintiff's allegations "do not establish the denial of medical treatment but . . . reveal only McQueen's dissatisfaction with the treatment offered him, extraction of his injured teeth versus more expensive restorative treatment, which is insufficient to state a claim under § 1983.  McQueen has no right to the treatment of his choice."); Green v. Hendrick Med. Ctr., 251 F.3d 157, 2001 WL 300844, at *1, *3 (5th Cir. 2001) (Prisoner with loose dentures complained that officers forced inmates to eat quickly during meals, which caused painful lacerations, swelling, and bleeding in plaintiff's gums.  "Prison officials offered Green a blended food pass, which he refused.  An inmate's disagreement with medical treatment does not give rise to a constitutional claim.").

Therefore, plaintiff's complaints in this case about his dental care advance a legally frivolous argument and fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983.

## VI.   INADEQUATE ARP RESPONSES

Williams testified that, although he filed many grievances through the Coleman ARP, the responses he received were inadequate and unprofessional.  This complaint

completely fails to state a claim for relief under Section 1983.  Defendants' allegedly inadequate responses to plaintiff's ARP requests do not constitute a constitutional violation.

The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on a legally nonexistent interest,  any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."  Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995); Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995)); accord Bell v. Woods, No. 09-41000, 2010 WL 2545421, at *2 (5th Cir. June 18, 2010); Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010), cert. denied, No. 09-10742, 2010 WL 1942272 (Oct. 4, 2010).

"Additionally, [plaintiff] could not show any injury from the failure to consider his grievances because the alleged [passing of keys to an inmate, transfers of other prisoners, the cost of a replacement dental plate, the law library and plaintiff's classification, of which] he complained . . . in the grievances did not implicate his constitutional rights."  Bell, 2010 WL 2545421, at *2.

In this case, plaintiff commenced the prison's ARP concerning his complaint.  His complaint is merely that he was not satisfied with the response.  Any allegations

36

concerning defendants' noncompliance with their own ARP rules in no way implicate plaintiff's First Amendment right to petition the government for redress of grievances, because that right is one of access to the courts, not to an ARP.  This claim is legally frivolous.

Williams may be complaining in general terms that defendants have failed to operate the jail in compliance with DOC policies and procedures.  However, plaintiff's complaint in this regard wholly fails to assert anything that might be characterized as a violation of constitutional rights cognizable under Section 1983.  The Fifth Circuit has indicated that allegations that a prison official has failed to follow particular prison rules, regulations or procedures cannot support a Section 1983 claim, without an independent constitutional violation.  Eason v. Thaler, 73 F.3d 1322, 1325-26 (5th Cir. 1996).  "[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process."  Stanley v. Foster, 464 F.3d 565 (5th Cir. 2006) (quoting Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996)).

No independent, nonfrivolous constitutional violation has been alleged in this case.  Thus, defendants' alleged failures to respond more adequately to Williams's complaints or grievances about the passing of keys to an inmate, transfers of other prisoners before plaintiff, the cost of a replacement dental plate, the law library and

plaintiff's classification in no way implicate his constitutional rights that might serve as

a basis for Section 1983 relief.

VII.   CLASSIFICATION

Williams complained that, as a convicted inmate, he should not have been housed

with pretrial detainees because any potential altercation with a pretrial detainee might

have resulted in a longer sentence for him.  Williams conceded, however, that he did not

have any fights with a pretrial detainee or anyone else and did not suffer any additional

sentence as a result of being housed with pretrial detainees at Coleman.

In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981),[2] the en banc Fifth Circuit

stated that

> [t]he confinement of pretrial detainees indiscriminately with convicted
> persons is unconstitutional unless such a practice is "reasonably related to
> the institution's interest in maintaining jail security," or physical facilities
> do not permit their separation.  Of course, if a particular pretrial detainee
> has a long record of prior convictions or is likely to be violent, imposition
> of greater security measures is warranted . . . .   Nonetheless, pretrial
> detainees have a due process right to be considered individually to the
> extent security and space requirements permit.

Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations

omitted) (emphasis added).  Thus, the Fifth Circuit in Jones recognized that the housing

of pretrial detainees with convicted inmates may raise concerns about the due process

---

[2]Overruled on other grounds by Int'l Woodworkers v. Champion Int'l Corp., 790 F.2d 1174 (5th
Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

rights of the <u>pretrial detainees</u>, not the convicted inmates like Williams, but only if the pretrial detainees' classification together with convicted inmates is handled indiscriminately without justification.  <u>Pembroke v. Wood County</u>, 981 F.2d 225, 229 (5th Cir. 1993); <u>Lathers</u>, 2010 WL 1489903, at *7.  However, the court also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.

Significantly, the classification of inmates is an administrative function of the prison.  <u>Jones</u>, 636 F.2d at 1376.  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  <u>Bell</u>, 441 U.S. at 547-48; <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1409 (8th Cir. 1994); <u>accord</u> <u>Woods</u>, 51 F.3d at 582 (citing <u>Hewitt v. Helms</u>, 459 U.S. 460, 469-70 (1983)); <u>Canterino v. Wilson</u>, 869 F.2d 948, 953 (6th Cir. 1989) (citing <u>Hewitt</u>, 459 U.S. at 472).  "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law."  <u>Woods</u>, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification.  The classification of prisoners is a matter within the discretion of prison officials.  Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."  Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, 196 F. App'x 287, 288 (5th Cir. 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

Under the precise circumstances of this case, it cannot be concluded that housing Williams, a convicted inmate, with pretrial detainees was unconstitutional.  "In any event, the general policy favoring such status-based segregation is to protect the pretrial detainees from the perhaps more dangerous convicted inmates, not vice versa.  Plaintiff is a convicted inmate, and he certainly has no colorable claim arising from the fact that he is housed with detainees."  Diggs v. Nelson Coleman Corr. Ctr., No. 10-97, 2010 WL 10382, at *7 (E.D. La. Feb. 17, 2010) (Knowles, M.J.), report & recommendation adopted, 2010 WL 1038230 (E.D. La. Mar 17, 2010) (Barbier, J.); accord Lathers, 2010 WL 1489903, at *8 (citing Davis v. St. Chas. Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *8 (E.D. La. Mar. 8, 2010) (Lemmon, J.)).

In this instance, housing Williams, a convicted inmate, together with pretrial detainees cannot be characterized as arbitrary or indiscriminate.  It resulted in no harm

whatsoever.  It was a reasonable administrative decision and was not an abuse of the

discretion the law assigns to prison officials, with which this court should not interfere.

No violation of Williams's constitutional rights occurred under these circumstances.

VIII.  <u>VARIOUS CONDITIONS OF CONFINEMENT</u>

Plaintiff's testimony establishes that he was a convicted prisoner at all relevant

times concerning the conditions about which he complains, including inadequate

ventilation, unsanitary living conditions, poor drinking water, showers and urinals that

were too close to where inmates ate, and meals that were cold and stacked on trays with

"no steam lines, no steam table."  Thus, the Eighth Amendment legal standard applies

to his claim.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment

on convicted prisoners.  "Prison conditions constitute cruel and unusual punishment if

they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly

disproportionate to the severity of the crime warranting imprisonment.'"  <u>Hamilton v.</u>

<u>Lyons</u>, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337,

347 (1981)) (citing <u>Estelle</u>, 429 U.S. at 103; <u>Hutto v. Finney</u>, 437 U.S. 678, 687 (1978));

<u>accord</u> <u>Stanfield v. Gusman</u>, No. 09-7183, 2010 WL 2133877, at *3 (E.D. La. Apr. 21,

2010) (Roby, M.J.), <u>report & recommendation adopted</u>, 2010 WL 2075550 (E.D. La.

May 20, 2010) (McNamara, J.); David v. Hill, 401 F. Supp. 2d 749, 758 (S.D. Tex. 2005).

"Like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and subjective components." Davis, 157 F.3d at 1006 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)); accord Wilson, 501 U.S. at 298-99; Downey v. Denton County, 119 F.3d 381, 385-86 (5th Cir. 1997). To succeed on a claim of unconstitutional conditions of confinement, this court must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303). If the court finds that either the subjective or objective component of the test is not met, it need not address the other component. Davis, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in Wilson noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9.

Thus, conditions within a prison may constitute cruel and unusual punishment if they result in "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347.  Otherwise, "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id.  Conditions that "cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Id.  The Eighth Amendment "may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." Wilson v. Lynaugh, 878 F. 2d 846, 849 (5th Cir. 1989) (footnote omitted).

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard.  Wilson, 501 U.S. at 303.  "Deliberate indifference," as defined above, means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837).

"Under exceptional circumstances, a prison official's knowledge of a substantial risk of

harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511

U.S. at 842 & n.8).   "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511

U.S. at 838-40).

Plaintiff has alleged no facts which show that the defendants acted with "deliberate

indifference" either in creating these conditions or failing to respond to them.  Plaintiff

has not alleged a "serious risk of harm" and has not alleged facts sufficient to show that

defendants actually drew an inference that an excessive risk of harm to plaintiff existed

because of the allegedly inadequate ventilation, unsanitary living conditions, warm

drinking water, showers and urinals that were too close to where inmates dined, and cold

meals that were provided to him at the prison.

(A)    Ventilation

Specifically, plaintiff testified that the jail was air-conditioned and air was

blowing, but the air flow was insufficient.  However, he testified that he experienced only

cold-like symptoms that disappeared on their own without medication, which he was

offered but refused.  He did not testify that he suffered any serious heat-related illness or

injury.  Such conclusory allegations of inadequate ventilation, without more, implicate

no federal constitutional right.  Johnson v. Tex. Bd. of Crim. Justice, 281 Fed. App'x

319, 321 (5th Cir. 2008) (citing Woods, 51 F.3d at 581; Parker v. Smith, 22 F.3d 1094,

1994 WL 198944, at *2 (5th Cir. 1994); <u>Green v. McKaskle</u>, 788 F.2d 1116, 1125 (5th

Cir. 1986)); <u>accord</u> <u>Rue v. Gusman</u>, No. 09-6480, 2010 WL 1930936, at *5 (E.D. La.

May 11, 2010) (Shushan, M.J.) (citing <u>Johnson</u>, 281 F. App'x at 321; <u>Johnson v. Thaler</u>,

No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); <u>Parker v. Smith</u>, No.

93-5542, 1994 WL 198944, at *2 (5th Cir. May 6, 1994); <u>Davis</u>, 2010 WL 890980, at *7;

<u>Carter v. Strain</u>, No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009) (Knowles,

M.J.)); <u>cf.</u> <u>Robichaux v. Cain</u>, 99 F. App'x 561, 561-62 (5th Cir. 2004) (Inmate stated a

constitutional claim when he "alleged facts sufficient to show that he had sustained a

physical injury–the aggravation of his asthmatic condition–as the result of the

unconstitutional deprivation of adequate ventilation in his prison cell, and that the

defendants were apprised of the conditions in his cell block and the deleterious effect of

those conditions on his health and failed to take action to correct the conditions.").

    (B)    <u>Food and Water</u>

Williams complained that all of his meals were cold and were stacked on trays

with "no steam lines, no steam table." He said that iced drinking water was provided in

a five-gallon water cooler once a day in the morning, but was left to become warm in the

afternoon after the ice melted. He complained that inmates stuck their hands or cups in

the water cooler, that "no scoop," was provided, and that the water delivery situation was

unsanitary.  Williams also complained that microwaveable items are sold at the jail, but that no microwave is available to the inmates.

States violate the Constitution if they fail to provide prisoners with reasonably adequate food, clothing, shelter and sanitation.  Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  However, the storage and handling of food is a discretionary, administrative function of prison officials.  Holloway v. Gunnell, 685 F.2d 150, 155 (5th Cir. 1982).  Courts must accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  Thus, "in the absence of allegations that the food supplies became contaminated because of the prison officials' neglect, the storage of the food is a matter for the prison officials" to decide and administer.  Holloway, 685 F.2d at 155.

In this case, plaintiff's allegations, while describing less than ideal conditions, do not rise to the level of a violation of his constitutional rights.  Although plaintiff said he experienced "cold" symptoms, which his body had already fought off by the time the doctor prescribed medications for him, Williams reports no serious illness or injury from having eaten this food and drunk the water.  Constitutional standards require only that prison authorities provide an inmate with "'well-balanced meal[s], containing sufficient

46

nutritional value to preserve health.'" Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999)

(quoting Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986)).  Plaintiff has failed to set

forth facts to establish a deprivation of or deviation from this quality of food.  The

Constitution does not require that convicted inmates be provided with particular foods

or foods at a certain temperature or every culinary amenity that one may find desirable.

Williams v. Berge, 102 F. App'x 506, 507 (7th Cir. 2004); LeMaire v. Maass, 12 F.3d

1444, 1456 (9th Cir. 1993) (citing Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th

Cir. 1985); Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977)); Wishon v.

Gammon, 978 F.2d 446, 449 (8th Cir. 1992); Robles v. Coughlin, 725 F.2d 12, 15 (2d

Cir. 1983); Taylor v. Quarterman, No. 5:09-CV-182-BG, 2010 WL 2671457, at *7 (N.D.

Tex. June 29, 2010) (citing Berry, 192 F.3d at 507); Green v. Tudor, 685 F. Supp. 2d

678, 694 (W.D. Mich. 2010) (citing Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987));

see also ; Wilkerson v. Champagne, No. 03-1754, 2003 WL 22872106, at *2 (E.D. La.

Nov. 28, 2003) (Shushan, M.J.) (no constitutional claim when meals served from "old,

cracked, dirty food trays" were not always hot); Sardon v. Peters, No. 04-C-7505, 1995

WL 609147, at *8 (N.D. Ill. Oct. 13, 1995) (allegation that cold food was served fails to

state a constitutional claim).

　　　　The Constitution also does not require that plaintiff receive particular amounts or

kinds of food, and certainly not the provision of a microwave oven to afford him the

convenience of microwaveable foods while incarcerated.  <u>Green</u>, 801 F.2d at 770.

"'Whether the deprivation of food falls below this threshold depends on the amount and

duration of the deprivation.'  Even on a regular, permanent basis, two meals a day may

be adequate."  <u>Berry</u>, 192 F.3d at 507 (quoting <u>Green</u>, 801 F.2d at 770-71).  Further,

"inmates cannot expect the amenities, conveniences and services of a good hotel." <u>Harris</u>

<u>v. Fleming</u>, 839 F. 2d 1232, 1235 (7th Cir. 1988).

Plaintiff was never denied food or water, and there is no allegation that the food

provided was nutritionally inadequate.  Williams's complaints about the food and water

at the jail are legally frivolous and must be dismissed.

(C)   <u>Sanitation</u>

Short-term sanitation problems, although admittedly unpleasant, do not amount

to constitutional violations.  <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 958 (8th Cir.

1994); <u>Knop v. Johnson</u>, 977 F.2d 996, 1013 (6th Cir. 1992); <u>Robinson v. Illinois State</u>

<u>Corr. Ctr.</u>, 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably

adequate hygiene and sanitation conditions."  <u>Burton v. Cameron County</u>, 884 F. Supp.

234, 241 (S.D. Tex. 1995) (citing <u>Green</u>, 801 F.2d at 771; <u>accord</u> <u>Benshoof v. Layton</u>,

351 F. App'x 274, 279 (10th Cir. 2009); <u>Gates</u>, 376 F.3d at 342.

None of Williams's allegations about the conditions at the jail establish

constitutional violations.  <u>See</u> <u>Davis</u>, 157 F.3d at 1006 (no constitutional injury when

plaintiff was confined in "filthy" cell for three days) (citing <u>Smith v. Copeland</u>, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); <u>Davis</u>, 2010 WL 890980, at *9 (citing <u>Talib</u>, 138 F.3d at 215); <u>Wilson v. Lynaugh</u>, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In short, none of Williams's complaints about the conditions of his confinement rise to the level of a constitutional violation. Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." <u>Holloway</u>, 685 F.2d at 156. Courts have repeatedly held that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions. <u>Talib</u>, 138 F.3d at 215 (citing <u>Rhodes</u>, 452 U.S. at 349); <u>Hernandez v. Velasquez</u>. 522 F.3d 556, 560 (5th Cir. 2008).

Living in conditions such as those described by Williams may be a temporary inconvenience, but he has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement.

IX.   <u>CANTEEN PRICES</u>

Williams complains that he was overcharged for commissary items.  However, he has no constitutional right to commissary privileges of any kind, either at high or at discount prices.  Numerous courts have considered claims like plaintiff's that prices of prison commissary items are too high and have held that such allegations fail to state a claim of violation of constitutional rights cognizable under Section 1983.  <u>E.g.</u>, <u>McCall v. Keefe Supply Co.</u>, 71 F. App'x 779, 780 (10th Cir. 2003); <u>Tokar v. Armontrout</u>, 97 F.3d 1078, 1083 (8th Cir. 1996); <u>French v. Butterworth</u>, 614 F.2d 23, 25 (1st Cir. 1980); <u>Armstrong v. Broadus</u>, No. 1:08CV225HSO-JMR, 2009 WL 3805552, at *9 (S.D. Miss. Nov. 6, 2009); <u>Brown v. Gulash</u>, No. 07-cv-370-JPG, 2009 WL 2144592, at *5 (S.D. Ill. July 16, 2009); <u>Byrd v. L.C.S. Corr. Servs., Inc.</u>, No. 07-0029, 2007 WL 2156583, at *10 (W.D. La. Apr. 27, 2007) (Methvin, M.J.).

X.   <u>LOSS/DEPRIVATION OF PROPERTY</u>

Williams alleges that his personal property, consisting of his watch, earrings, a ring, a radio, a cross chain, his Blackberry cell phone and some personal hygiene items, were shipped with him from Jefferson Parish when he was transferred to Coleman, but that all of his property has not been delivered or shown to him.  He said his complaint was that all of his property was not delivered to him upon his arrival at Coleman and that he had not been permitted to have his personal hygiene items.  Defendants provided the

50

court with the prison's records concerning plaintiff's property, but those records do not specifically indicate that these particular items were received at Coleman when plaintiff arrived or were returned to him when he left.  Record Doc. No. 40-1.

Construed broadly, these allegations may constitute a complaint that Williams was deprived of his property in violation of his due process rights.  However, plaintiff fails to state a cognizable Section 1983 claim in this regard, and his claim must be dismissed.

In deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest–life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process."  Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984); accord Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988); Cuellar v. Tex. Employment Comm'n, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has consistently ruled that a prisoner's property and due process rights are circumscribed by his custodial status.  In general, the Supreme Court has ruled that a state actor's random and unauthorized deprivation of a prisoner's property, whether negligent or intentional, does not result in a violation of due process rights if the State provides an adequate post-deprivation remedy.  Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517 (1984); Parratt

v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); accord Wilson v. Holt, 158 F. App'x 546, 546 (5th Cir. 2005).

More specifically, in Parratt, a state prisoner, like Williams, sued prison officials under Section 1983 alleging that their negligent loss of a hobby kit he had ordered from a mail order catalog deprived him of property without due process of law.  The United States Court of Appeals for the Eighth Circuit affirmed the district court's summary judgment in the prisoner's favor, but the Supreme Court reversed, finding that no due process violation occurs when a state employee negligently deprives a prisoner of property, provided that the State makes available a meaningful post-deprivation remedy. Parratt, 451 U.S. at 543-44, cited in Hudson, 468 U.S. at 532.

In Hudson, a state prisoner filed suit under Section 1983, alleging that the correctional officer defendants had "conducted a 'shakedown' search of [the prisoner's] locker and cell for contraband," and had "intentionally destroyed certain of his noncontraband personal property during the . . . search."  Hudson, 468 U.S. at 519-20. The Court specifically approved the conduct by prison officials of "wholly random searches" or "routine shakedowns of prison cells" as "essential" to the effective security and administration of prisons.  Id. at 529.  Finding that the State had provided an adequate post-deprivation remedy for the alleged destruction of plaintiff's property, the

52

Court found no violation of his rights actionable under Section 1983. "We hold that the Fourth Amendment has no applicability to a prison cell. We hold also that, even if [the officers] intentionally destroyed [the prisoner's] property during the challenged shakedown search, the destruction did not violate that Fourteenth Amendment since the [State] has provided [the prisoner] an adequate post-deprivation remedy." Id. at 536.

The Fifth Circuit has clearly recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. Hutchinson v. Prudhomme, 79 F. App'x 54, 55 (5th Cir. 2003); Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Thus, the deprivation of property alleged by Williams in this case, whether negligent or intentional, is precisely the kind of prisoner's claim as to which the Fifth Circuit has consistently affirmed dismissals by applying the Parratt/Hudson doctrine. See, e.g., Hutchinson, 79 F. App'x at 54 (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy); Marshall, 741 F.2d at 764 (Louisiana law provided adequate post-deprivation remedy when inmate's "personal property was scattered about and some items were missing" from his cell); see also Odom v. St. Tammany Parish S.O., No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009) (McNamara, J.) (state law provided adequate remedy for allegations that

deputies took inmate's mail, pictures, addresses for witnesses for his criminal case and copies of motions).  Such dismissals are mandated, even when the plaintiff has alleged that the property deprivation violates some prison regulation or policy.  See Myers v. Klevenhagen, 97 F.3d 91, 95 (5th Cir. 1996) (no due process violation when prison officials debited inmate's prison account to pay for medical services provided in prison, even when the action violated the prison's own policies, procedures or regulations); Murphy v. Collins, 26 F.3d 541 (5th Cir. 1994) (Inmate's Section 1983 claim that his dictionary (later destroyed as contraband), cup and bowl were confiscated without regard to prison policy was properly dismissed when adequate state post-deprivation remedies were available.); Stewart v. Herrington, No. 5:06cv177-MTP, 2008 WL 3822597, at *3-4 (S.D. Miss. Aug. 12, 2008), adhered to on reconsideration, 2008 WL 3884394 (S.D. Miss. Aug. 14, 2008) (Inmate's allegation that prison nurse charged him twice, although he saw the doctor only once, resulting in an overcharge, was dismissed because state law provided an adequate post-deprivation remedy.).

Plaintiff's state law remedy for the alleged negligent or intentional deprivation of his property lies in a conversion or other tort suit for damages in state court.  Because no constitutional violation has been alleged, his complaint in this court fails to state a claim for which relief may be granted pursuant to Section 1983 and/or is legally frivolous and

54

must be dismissed.  Williams remains free to pursue his claim concerning his property in state court against the state officials who allegedly mishandled his property.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this _____12th_____ day of October, 2010.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.